**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| TOM F. BECK, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 112-188 |
| | * | |
| AUGUSTA, GEORGIA, and | * | |
| FRED RUSSELL, in his | * | |
| individual capacity, | * | |
| | * | |
| Defendants. | * | |

## O R D E R

Plaintiff alleges a retaliation claim against his former employer, Defendant Augusta, Georgia ("Augusta"), under the Fair Labor Standards Act of 1938, 29 U.S.C. § 215, et. seq., ("F.L.S.A."), interference and retaliation claims against Augusta under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et. seq., ("F.M.L.A."), and a defamation claim against his former supervisor, Defendant Fred Russell ("Russell"). Before the Court are Defendants' motions for summary judgment. (Doc. nos. 30, 31.) For the reasons set forth herein, the motions are **GRANTED**.

## I. INTRODUCTION

### A. Factual Background

Augusta hired Plaintiff on June 1, 1977, and eventually

appointed him to the position of Director of the Parks, Recreation & Facilities Department ("Department") in November of 1996. (Beck Dep. at 40, 46.) As Director, Plaintiff was responsible for the overall operation of parks and recreation programs, budgeting, and staff, and held that office until Augusta terminated his employment for cause on April 23, 2012. (Beck Dep. at 46; Am. Compl. ¶ 7.)

The governing authority of Augusta is the Commission-Council consisting of ten Commissioners and the Mayor ("Commission"). (Am. Compl. ¶¶ 4, 6.) At all relevant times, Mr. Fred Russell ("Russell") was Augusta's Administrator and Plaintiff's supervisor. (Russell Dep. at 18-19.) Russell was responsible for Plaintiff's performance evaluations and could make recommendations to the Commission regarding Plaintiff's termination, but only the Commission had the authority to hire or fire Plaintiff and other department directors. (Id.)

Ms. Melinda Pearson ("Pearson") was an operations manager for the Department where her duties included maintenance of all parks and recreation buildings, managed a staff of approximately twenty-five employees. Her responsibilities required her to work more than eighty hours per two week pay period week. (Beck Dep. at 50-51, 62-63.) Pearson was an exempt employee, which meant that she received a salary that was intended to compensate her for all hours that she worked.

(Pearson Decl. ¶ 10; Personnel Policy & Procedures Manual ("P.P.P.M.") at 115.) Augusta policy provides that Pearson and other exempt employees are prohibited from earning compensatory time. (P.P.P.M. at 98.) Compensatory time is time off given to non-exempt employees who work extra hours and is regulated by the overtime provisions of F.L.S.A. (Id. at 13, 98-99.) Non-exempt employees maintain a record of the hours they work each day and are compensated on an hourly basis. (Id. at 114-15.)

Mr. Tommy Boyles ("Boyles") served as Director of the Department until 1996, during which time Plaintiff served as Boyles' Deputy Director. (Boyles Aff. ¶¶ 1-3.) In Boyles' view, Augusta's policy prohibiting exempt employees from receiving compensatory time created a problem within the Department. (Id. ¶ 5.) Therefore, Boyles allowed certain exempt employees to earn compensatory time. (Id. ¶ 6.) He and his management staff accomplished that by signing certain exempt employees' time cards indicating that they were at work when in fact they were not at work. (Id.) Boyles explains his decision as follows:

> I was authorized to begin recording time on the exempt employee's time cards which reflected time work [sic] that they were not really working. The idea would be that I, and my management staff, would track the overtime, that is over thirty-seven and a half hours, that each of these exempt employees worked and we would make sure they got comp time as it accrued. By the time I left there

were about ten to twelve employees who were being
paid in this way.

(Id.) He asserts that he did not create this system, but that
it was in use when he became Director. (Id. ¶ 7.) He explains
further that the Commission was aware of this system and that
he would frequently report to the Administrator on how the
Department handled overtime and, specifically, the
compensatory time for exempt employees. (Id. ¶ 7.) Boyles
insists that Russell, in particular, and most of the
Commissioners, knew about the Department's practice and how it
worked. (Id. ¶ 8.)

Although Boyles admits that he allowed many exempt
employees to accrue this benefit, he does not explicitly say
that Pearson was one of them. Pearson claims that she was.
(Pearson Decl. ¶¶ 18-23.) In 1996, when Augusta appointed
Plaintiff to succeed Boyles as Director of the Department,
Plaintiff resisted his predecessor's practice of authorizing
Pearson's requests for compensatory time. (Pearson Decl. ¶
35.) Pearson then complained to Augusta's Human Resources
Department ("H.R."). (Etheridge Letter ¶ 1.)

On April 20, 1999, Mr. John Etheridge, Director of H.R.
("Ethridge"), sent a letter to Plaintiff as a result of
Pearson's H.R. complaint. Etheridge acknowledged that Pearson
should not accrue compensatory time because she was an exempt
employee. (Id. ¶ 2.) However, he explained that she had

4

nonetheless earned this benefit due to her earlier arrangement with Boyles, that her compensatory time was now her property to be used as she chooses, and that Plaintiff must approve her compensatory time requests if her absence would not be unduly disruptive. (Id. ¶¶ 3-4.)

In the fall of 2011, Pearson took a medical leave of absence pursuant to F.M.L.A. (Pearson Decl. ¶¶ 140-41, 149; Beck Dep. at 54.) After her medical leave, she returned to the same position at the same pay that she had at the commencement of her leave. Upon her return to work, Pearson requested compensatory time for December 27-30, 2011, asserting that she had earned this benefit prior to her F.M.L.A. leave. (Pearson Decl. ¶¶ 150, 154.) Plaintiff approved her request by signing her time card indicating that she was at work those four days, when in fact she was not at work. (Beck Dep. at 54-55; Meeting Minutes at 3.)

On April 12, 2012, Russell sent Plaintiff a letter informing him of an investigation into allegations of time card fraud. (Russell Letter ¶ 1.) The letter set forth the following four allegations:

(a) fraud, waste, or abuse of Augusta, Georgia property or time;

(b) falsification or misrepresentation of an official document or record;

(c) directing or permitting a subordinate to violate any rule, policy, or regulation; and

> (d) intentional destruction, theft (including
> stealing time), or removal, possession, or use of
> Augusta, Georgia, property, tools, or equipment
> without consent.

(Id.) Russell placed Plaintiff on administrative leave until the Commission was able to make a decision regarding Plaintiff's employment. (Id. ¶ 2.) Further, Russell intended to recommend to the Commission that it terminate Plaintiff's employment for cause. (Id.)

On April 23, 2012, the Commission provided Plaintiff an opportunity to be heard on the matter. (Meeting Minutes at 2.) With regard to whether Plaintiff signed the time card, Plaintiff stated:

> I've been accused of fraudulently signing a time
> card for an employee that showed four days of
> regular work hours when in fact the employee did
> not work. Well, I'm here to tell you today that's
> absolutely true. Positively, absolutely true.

(Id. at 3.) However, Plaintiff defended his integrity and insisted that "the recording of that kind of time has been standard process" for the Department for "at least thirty-five years." (Id.) He asserted that other departments had used the same process, but not nearly as frequently as his department had. (Id.) Plaintiff concluded his remarks to the Commission by saying:

> I'm asking you not to terminate me for this because
> this is not a fraudulent case. This was not a case
> where old Tom stole anything from this government.
> This was a case of standard process that we've been

> using for years and years. If the process is wrong,
> tell us. If there was another process to have done
> it better, I would gladly have done it. This is the
> process that we knew how to do and how to record
> it. This is what we did for years and years.

(Id. at 4.) Plaintiff did not assert during his statement that Augusta's policies were unlawful. Following Plaintiff's remarks, Russell recommended to the Commission that Plaintiff be terminated for cause and the Commission voted 8-to-1 in favor of termination. (Id. at 6.)

### B. Procedural History

On November 14, 2012, Plaintiff initiated an action against Augusta and Russell in the Superior Court of Richmond County, Georgia, alleging that Plaintiff's termination violated F.L.S.A. and F.M.L.A. (Compl., Ex. A.) On December 13, 2012, Augusta and Russell removed the action to this Court.

On January 23, 2013, Plaintiff filed an amended complaint seeking damages, all available equitable remedies, attorney's fees and expenses of litigation. (Am. Compl. ¶¶ 24-27.) Plaintiff's amended complaint alleges violations of F.M.L.A. and F.L.S.A. and a state law claim of defamation. The Court granted Russell's motion to dismiss Plaintiff's F.M.L.A. and F.L.S.A. claims against him because Russell was not Plaintiff's employer. The Court also dismissed Plaintiff's defamation claim against Augusta and Russell in his official

capacity on grounds of immunity. (Doc. no. 24.) The claims that remain are

> (1) Plaintiff's F.L.S.A. claim against Augusta;
> (2) Plaintiff's F.M.L.A. claim against Augusta; and
> (3) Plaintiff's defamation claim against Russell in his individual capacity.

On June 26, 2014, Defendants filed separate motions for summary judgment. (Doc. nos. 30, 31.) Plaintiff then filed a motion to dismiss the motions for summary judgment, arguing that Defendants failed to include statements of material facts as required by  Local Rule 56.1. (Doc. no. 36.) Defendants promptly corrected the deficiency. (Doc. nos. 39, 40.) Because Plaintiff suffered no prejudice, the Court **DENIES** Plaintiff's motion to dismiss. (Doc. no. 36.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable

inferences in [its] favor." <u>U.S. v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (<u>en banc</u>)(internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. <u>Jones v. City of Columbus</u>, 120 F.3d 248, 254 (11th Cir. 1997)(<u>per curiam</u>). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. <u>Clark</u>, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact

9

that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

The Clerk has given the non-moving party notice of the motions for summary judgment and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. nos. 32, 33.) Therefore, the notice requirements of Griffith v.

Wainwright, 772 F.2d 822, 825 (11th Cir. 1985)(per curiam), are satisfied. The time for filing materials in opposition has expired, and the motions are ripe for consideration.

**B. Plaintiff's F.L.S.A. Claim Against Augusta**

Plaintiff asserts that Augusta fired him because he properly compensated Pearson for overtime and that his termination was retaliation as prohibited by F.L.S.A. The F.L.S.A. protects persons against retaliation for asserting their rights under the statute. Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342 (11th Cir. 2000); see 29 U.S.C. § 215(a)(3). A prima facie case of F.L.S.A. retaliation requires a demonstration by the plaintiff of the following: (1) he engaged in activity protected under the Act; (2) he subsequently suffered adverse action by the employer; and (3) a causal connection exists between the employee's activity and the adverse action. Id. at 1342-43. If the plaintiff establishes a prima facie case of retaliation, the employer then must articulate a legitimate nonretaliatory reason for the adverse employment action. Raspanti v. Four Amigos Travel, Inc., 266 F. Appx. 820, 822 (11th Cir. 2008). If the employer meets this burden of production, then the plaintiff must establish that the proferred reason is pretextual. Id.

As for the first element, an employee engages in protected activity if he files any complaint or institutes or

causes to be instituted any proceeding under or related to F.L.S.A., or has testified or is about to testify in any such proceeding. Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1133 (N.D. Ga. 2004)(quoting 29 U.S.C. § 215(a)(3)). An employee need not meet a particular level of formality for his action to qualify as protected activity. Bryant v. Johnny Kynard Logging, Inc., 930 F. Supp. 2d 1272, 1290 (N.D. Ala. 2013). The test is whether the employee's action was sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. Id. at 1290-91 (quoting Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1335 (2011)); see, e.g., Johnson v. Advertiser Co., 778 F. Supp. 2d 1270, 1277-78 (M.D. Ala. 2011)(first element met where plaintiff informed his supervisors prior to his termination that his subordinates were working more than forty hours per week and requested that they be compensated through overtime pay or compensatory time; informed a senior official in the company prior to his termination that certain members of plaintiff's staff were under reporting their hours due to pressure that they not work more than forty hours per week; sent the official an email prior to his termination claiming that plaintiff was one of few employees "who had the courage

12

to speak up in the face of injustices;" and complained generally, rather than specifically mentioning F.L.S.A., that company policies were unlawful); Henderson v. City of Grantville, Ga., 2014 WL 3956107, *2 (Aug. 14, 2014, N.D. Ga.)(first element met where employee provided evidence of formal written complaints and informal oral complaints to supervisors about non-payment of wages); Jones v. Hamic, 875 F. Supp. 2d 1334, 1352-53 (M.D. Ala. 2012)(first element not met where county administrator's letter to her supervisor complaining of her demotion from exempt employee status did not make clear that she was asserting rights protected by F.L.S.A.); Ash v. Sambodrome, LLC, 676 F. Supp. 2d 1360, 1373-74 (S.D. Fla. 2009)(first element not met where restaurant server made vague statements to managers about tip share policy); Alvarado v. I.G.W.T. Delivery Systems, Inc., 410 F. Supp. 2d 1272, 1279 (S.D. Fla. 2006)(first element not met where employees' letters to management did not appear to clearly assert rights under F.L.S.A. in that they made no specific mention of overtime pay or invoke F.L.S.A.).

In this case, Plaintiff never complained. In his statement before the Commission, he defended his own integrity and insisted that his actions were consistent with longtime Department practices. He did not argue that Augusta had committed F.L.S.A violations or insist, even in general terms,

13

that its compensatory time policy or employee classification system was unlawful. Plaintiff's conduct of signing Pearson's inaccurate time card, without more, was not clear or detailed enough for Augusta or any reasonable employer to understand that he was asserting F.L.S.A. rights and calling for their protection. Therefore, the first element of his prima facie case is not met.

The parties do not dispute the second element. Under the third element, Plaintiff must show that he would not have been fired but for his assertion of F.L.S.A. rights. Wolf, 200 F.3d at 1343; Bryant, 930 F. Supp.2d at 1292. A plaintiff can satisfy this burden if he proves a close temporal proximity between the time his employer learned about the protected activity and his discharge. Raspanti, 266 F. Appx. at 823. Here, there is certainly a causal link between Plaintiff's termination and his activity, but that activity is not protected. See Johnson v. Gestamp Alabame, LLC, 946 F. Supp. 2d 1180, 1207 (N.D. Ala. 2013)(third element not met where the Court found that employer fired employee for taking extended breaks rather than for seeking proper compensation). As noted, Plaintiff has not shown that he engaged in protected activity in the first place, and therefore the third element of Plaintiff's prima facie case is also not met.

Even if Plaintiff had made out a prima facie case, he does not show that Augusta's reasons for terminating his employment - namely, the four allegations related to fraud set forth in Russell's letter to Plaintiff - were pretextual. Summary judgment in favor of Augusta is proper on Plaintiff's F.L.S.A. retaliation claim.

### C. Plaintiff's F.M.L.A. Claims Against Augusta

Courts recognize two types of F.M.L.A. claims: interference claims and retaliation claims. <u>Strickland v. Water Works and Sewer Bd. of the City of Birmingham</u>, 239 F.3d 1199, 1206 (11th Cir. 2001). Plaintiff does not make it clear in his amended complaint or in his various briefs which type of F.M.L.A. claim he is alleging here. Therefore, the Court addresses his allegations first in terms of an interference claim, then in terms of a retaliation claim.

1. Interference Claim

Generally, to establish an interference claim an employee must demonstrate that he was denied a benefit to which he was entitled under F.M.L.A. <u>Martin v. Brevard County Public Schools</u>, 543 F.3d 1261, 1266-67 (11th Cir. 2008)(citing 29 U.S.C. § 2615(a)(1)); <u>see</u> <u>Strickland</u>, 239 F.3d at 1206-07. Among the benefits granted to an employee is the right, upon returning from F.M.L.A. leave,

> a. to be restored by the employer to the position of employment held by the employee when the leave commenced; or
>
> b. to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1)(A)-(B); see 29 C.F.R. § 825.214. These statutory provisions give rise to a specific F.M.L.A. interference claim: the failure-to-reinstate interference claim. See Martin, 543 F.3d at 1266-67 (discussing payroll supervisor's allegation that school district interfered with his right to reinstatement by deciding, while he was on F.M.L.A. leave, not to renew his contract); see also Petty v. United Plating, Inc., 2012 WL 2047532, *8-9 (May 31, 2012, N.D. Ala.)(examining industrial production manager's allegation that his termination upon returning from his post-surgery medical leave was a failure to reinstate him to his previous position as prohibited by F.M.L.A.). To establish a failure-to-reinstate interference claim, an employee must show that he or she was denied reinstatement upon returning from F.M.L.A. leave. See Martin, 543 F.3d at 1267; see also Petty, 2012 WL 2047532, *9.

In this case, Plaintiff argues, citing 29 U.S.C. § 2614(a)(1)(B), that compensatory time was a "term and condition" of Pearson's employment and that she had a right to this term and condition when she returned from F.M.L.A. leave.

16

Plaintiff insists that his approval of Pearson's request for compensatory time, in the form of signing her inaccurate time card, was mandated by F.M.L.A.'s reinstatement provision. In other words, it is Plaintiff's position that F.M.L.A. required Plaintiff to give Pearson compensatory time and that Augusta violated the statute when it terminated him for doing so. Neither Plaintiff nor Augusta cite a case with even remotely similar facts and the Court is unable to find one.

Plaintiff's argument has two significant weaknesses. First, Plaintiff is not the one who requested or took F.M.L.A. leave. Pearson took F.M.L.A. leave, but Pearson is not the plaintiff here. Second, even if Pearson was the plaintiff, she was reinstated to the position she held prior to her leave. Plaintiff does not show, nor does he even attempt to show, that _he_ was denied reinstatement upon returning from _his_ F.M.L.A. leave. Augusta did not interfere with Plaintiff's F.M.L.A. rights. Accordingly, to the extent that Plaintiff asserts an interference claim under F.M.L.A., summary judgment is proper for Augusta.

2. Retaliation Claim

Because Plaintiff alleges that Augusta terminated his employment because he protected Pearson's F.M.L.A. rights, the Court now turns to the issue of retaliation under that statute. The framework used to evaluate retaliation claims

under F.M.L.A. is similar to one used to analyze F.L.S.A. retaliation claims, as discussed above.

To prove F.M.L.A. retaliation, an employee must show that his employer intentionally discriminated against him for exercising an F.M.L.A. right. Martin, 543 F.3d at 1267 (citing 29 U.S.C. § 2615(a)(2) & 29 C.F.R. § 825.220(c)). Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus. Id. at 1267-68. Absent direct evidence of retaliatory intent, courts apply the burden-shifting framework established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), for evaluating Title VI discrimination claims. Id. at 1268. Under that approach, an employee claiming F.M.L.A. retaliation must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to a protected activity. Id. If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse employment action. Id. The plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual. Id.

Plaintiff presents no direct evidence of Augusta's retaliatory intent, and therefore he must establish a prima facie case. As for the first element, requesting and taking F.M.L.A. leave are routinely considered by courts to be protected activities. See, e.g., Martin, 543 F.3d at 1268 (plaintiff took F.M.L.A. leave and therefore met the first element of a prima facie case); Clark v. Macon County Greyhound Park, Inc., 727 F. Supp. 2d 1282, 1292-93 (M.D. Ala. 2010)(employee met the first element where she contacted employer asking to take F.M.L.A. leave, then took time off work on account of a serious health condition that prevented her from being able to perform her job); Cruz v. Publix Super Markets, Inc. 428 F.3d 1379, 1384 (11th Cir. 2005)(employee would have met the first element if she had provided sufficient notice to her employer of a potentially F.M.L.A.-qualifying absence).

However, if an employee fails to show that he was eligible under F.M.L.A., then he cannot show, as a matter of law, that he was engaged in protected activity. Cash v Smith, 231 F.3d 1301, 1307 (11th Cir. 2000)(plaintiff did not satisfy the first element of a retaliation claim under F.M.L.A. where plaintiff's doctor certified that she was able to perform her job and therefore her medical leave was not taken under the auspices of F.M.L.A.); Morehardt v. Spirit Airlines, Inc., 174

19

F. Supp. 2d 1272, 1281 (M.D. Fla. 2001)("in order to state a prima facie claim for retaliation under the F.M.L.A. the plaintiff must establish that the conduct he has engaged in — which is the precipitating cause for the retaliation or termination of employment — be a protected activity, which means that the leave he has taken, or requests to take, must be leave that he is eligible for and is entitled to take under the Act"); Pennant v. Convergys Corp., 368 F. Supp. 2d 1307, 1313 (S.D. Fla. 2005)("employee who is ineligible for F.M.L.A. leave does not have a valid cause of action for retaliation under the F.M.L.A."). In other words, an employer cannot be liable for retaliation under F.M.L.A. where the employer terminates an employee who is not entitled to F.M.L.A. benefits. Cash, 231 F.3d at 1307. In this case, there is no factual dispute that Plaintiff was not eligible for F.M.L.A. benefits. His argument that he was protecting someone else's F.M.L.A. benefits does not help him to establish the first element of his prima facie case. Again, Pearson is not the plaintiff.

As for the second element, the parties agree that Plaintiff's termination was an adverse employment action. Regarding the third element, Plaintiff is unable to establish causation because he fails to show that he was engaged in protected activity. See Strickland, 239 F.3d at 1207 (employee

failed to meet third element because he did not refer to
F.M.L.A. at any time before city terminated him and therefore
city had no knowledge that he had raised a F.M.L.A. issue or
asserted rights under that statute).

Further, as the Court concluded in its discussion of
Plaintiff's F.L.S.A. claim, Plaintiff does not show that
Augusta's reasons for terminating his employment were
pretextual. To the extent Plaintiff asserts a retaliation
claim under F.M.L.A., summary judgment is proper in favor of
Augusta.

### D. Plaintiff's Defamation Claim Against Russell

Plaintiff alleges that Russell's (1) letter to Plaintiff
informing him that an investigation revealed evidence of
fraud, and (2) recommendation to the Commission that it
terminate Plaintiff's employment based on the findings of the
investigation, were defamatory. Russell contends that he is
entitled to qualified or official immunity and that Plaintiff
fails to show actual malice.

As the Court held in its Order on Defendants' motion to
dismiss, Russell is liable for defamation only to the extent
that Plaintiff can show actual malice. See Ga. Const., Art. 1,
§ 2, ¶ IX(d)("Except as specifically provided by the General
Assembly in a State Tort Claims Act, all officers and
employees of the state or its departments and agencies may be

subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions."); see also Adams v. Hazelwood, 271 Ga. 414, 414 (1999)(state officers and employees are not entitled to the protection of official immunity if the employee acted with actual malice)(quoting Ga. Const., Art. 1, § 2, ¶ IX(d)). To show actual malice, a plaintiff must present sufficient evidence that the defendant entertained serious doubts as to the truth of his publication. Evans v. Sandersville Georgia, Inc., 296 Ga. App. 666, 668 (2009)(citing New York Times Company v. Sullivan, 376 U.S. 254 (1964)). A defendant may refer to documents in the record to show an absence of actual malice. Atkins v. News Pub. Co., 290 Ga. App. 78, 81 (2008). To establish a cause of action for defamation under Georgia law, a plaintiff must submit evidence of (1) a false and defamatory statement; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words injurious on their face. Lewis v. Meredith Corp., 293 Ga. App. 747, 748 (2008).

As for the falsity of the statements, Russell's communications to Plaintiff and the Commission regarding allegations of time card fraud have a factual basis.[1] As Russell notes in his letter, the allegations were based on the findings of an investigation. Plaintiff does not argue that the allegations are inconsistent with the findings of the investigation. Further, as Russell correctly observes, at no time has Plaintiff argued that he did not sign the time card or that the time card was accurate. Plaintiff's insistence that Russell knew of the Department's long-standing practice of signing inaccurate time cards as a way of approving compensatory time requests from supervisors who work long hours simply shows that Russell's allegations may have been tardy, not false.

Under the second element, the parties do not dispute that Russell's statements were unprivileged and published to someone other than Plaintiff. As for the third element – Russell's fault in publishing the statements – a plaintiff's status as either a private figure or a public figure usually determines the proper standard of liability. Gettner v. Fitzgerald, 297 Ga. App. 258, 262-64 (2009)(private persons

---

[1] Although the parties focus much of their briefs on whether Plaintiff committed fraud, that issue is not before the Court. This is not an appeal from the Commission's decision to terminate Plaintiff for cause and the Court offers no comment on the merits of that decision. The Court here is concerned only with the prima facie elements of defamation, not fraud.

must prove ordinary negligence while public figures must show actual malice). However, an analysis of Plaintiff's status is unnecessary here because Russell's status as a public official demands a showing of actual malice. Even if Plaintiff is correct that Russell was aware of the Department's practice of signing time cards indicating that a supervisor worked when in fact she did not work, this does not mean that Russell had serious doubts that the practice was fraudulent. Russell refers to Plaintiff's statement before the Commission, during which Plaintiff admitted that he signed Pearson's time card in such manner, to show that Russell entertained no doubts regarding the veracity of the allegations. The Court finds that Plaintiff fails to show actual malice.

Plaintiff alleges damages as he must under the fourth element, but Russell does not contest this issue. Having failed to establish the first and third elements of Plaintiff's defamation claim - falsity and fault - summary judgment is proper in favor of Russell.

### III. CONCLUSION

Upon the foregoing, the Court finds that there is no genuine dispute as to any facts that are material to the claims raised in this case. Augusta and Russell are entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Defendants' motions for summary judgment (doc. nos. 30, 31) are **GRANTED**. Plaintiff's motion to dismiss Defendants' motions for summary judgment (doc. no. 36) is **DENIED**. The Clerk is directed to **TERMINATE** all pending motions and deadlines and **CLOSE** the case. Costs are taxed in favor of Defendants.

**ORDER ENTERED** at Augusta, Georgia, this _3rd_ day of _March_, 2015.

_____
Honorable J. Randal Hall
United States District Judge
Southern District of Georgia